CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 19 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

ROBERT A. WILKES, )
)
        Plaintiff, )
)
v. ) Civil Action No. 7:05cv172
)
JO ANNE B. BARNHART, )
COMMISSIONER OF SOCIAL SECURITY, )
)
        Defendant. )

## MEMORANDUM OPINION

Plaintiff Robert A. Wilkes ("Wilkes") brought this action pursuant to 42 U.S.C. § 405(g) for review of the decision of the Commissioner of Social Security denying his claim for disability insurance benefits ("DIB") and Social Security Income ("SSI") under Title II and XIV of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The parties have consented to the undersigned Magistrate Judge's jurisdiction over this matter, and the case is before the court on cross-motions for summary judgment. Having reviewed the record, and after briefing and oral argument, the case is now ripe for decision.

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

Plaintiff was born on July 11, 1969 and is a high school graduate. ("Administrative Record, hereinafter "R.." at 16) Plaintiff's previous work includes that of a grocery store bag boy, a worker in landscaping and lawn care, an installer of heating and air conditioning devices, and a pressman. (R. 84) Plaintiff filed an application for DIB and SSI on December 1, 2002, alleging he became disabled on August 31, 2002, due to a back impairment. (R. 59-61, 70, 224-26) Plaintiff's claims were denied at both the initial and reconsideration levels of administrative review, (R. 28-30, 36-38, 229-31), and an administrative hearing was held before an ALJ on September 23, 2003. (R. 249-85) On March 5, 2004, the ALJ issued a decision denying plaintiff's claims for DIB and SSI, finding plaintiff retained the residual functional capacity ("RFC") for blend of light and sedentary exertional level work. (R. 21) The ALJ's decision became final for the purposes of judicial review under 42 U.S.C. § 405(g) on February 23, 2005, when the Appeals Council denied plaintiff's request for review. (R. 6-10) Plaintiff then filed this action challenging the Commissioner's decision. Following summary judgment briefing, oral argument was held on November 15, 2005.

There are two principal issues raised by plaintiff Wilkes in this case. First, Wilkes argues that the ALJ's residual functional capacity analysis and the assessment of jobs available under Step 5 was erroneous because the hypothetical question posed to the vocational expert allowed for occasional stooping, when the evaluations of the treating physicians prohibited any stooping. Second, Wilkes contends that the ALJ erred in not finding that Wilkes met Listing 1.04.

Wilkes agrees that the ALJ's determination of residual functional capacity is "fairly consistent" with the opinions of his treating physicians, the opinion of the medical expert, Dr. Stevens, and the opinions of the state agency consulting physicians. Wilkes' Brief at 12. The ALJ found that Wilkes had a blended residual functional capacity of sedentary-light: sedentary

2

for walking and sitting, and light for lifting and carrying. The ALJ also noted that Wilkes requires a sit-stand option. (R. 21)

Wilkes argues, however, that the ALJ's determination at Step 5, i.e., that this RFC enables Wilkes to perform other work that exists in significant numbers in the national economy, is flawed because it relies on improper vocational expert testimony. In this regard, Wilkes contends that the evaluations of both his treating neurosurgeon, Dr. Vascik, and pain specialist, Dr. Bakhit, prohibit stooping, and that the ALJ's inclusion of occasional stooping in the hypothetical taints the opinion of the vocational expert at Step 5. Wilkes' argument is based on Dr. Vascik's evaluation that Wilkes could perform no bending, (R. 222), and Dr. Bakhit's evaluation that Wilkes could perform no stooping. (R. 218) Citing the Social Security Administration's Program Operations Manual System, Wilkes argues that Social Security defines "stooping" as "bending the body downward and forward by bending the spine at the waist." Wilkes' Brief at 17, citing POMS § DI 25001.001. Wilkes argues that a finding by Dr. Vascik that he cannot bend also means that he cannot stoop. Thus, Wilkes contends, both of his treating doctors evaluated him as being incapable of stooping, rendering flawed the hypothetical question posed to the vocational expert which mentioned occasional stooping.

Wilkes' argument fails, however, because it does not square with the actual evaluations done by Drs. Vascik and Bakhit. To be sure, consistent with Wilkes' argument, Dr. Vascik's evaluation states that Wilkes is not able to bend, and Dr. Bakhit's evaluation states that Wilkes is not able to stoop. (R. 218, 222) Wilkes' argument ignores, however, that Dr. Vascik's evaluation also states that Wilkes is able to stoop occasionally, (R. 222), and Dr. Bakhit's evaluation provides that he is able to bend occasionally. (R. 218) Thus, while Wilkes argues that the medical records reflect an absolute prohibition against stooping or bending, neither of the

3

treating physician evaluations fully support his contention as each flip flops on the bending/stooping issue.

Given this record, the ALJ saw fit to have Dr. Ward Stevens testify as a medical expert at the administrative hearing. (R. 262-69) Dr. Stevens opined that Wilkes could perform a "light sedentary type work with a sit-stand option." (R. 264) The ALJ also relied upon the evaluation of a state agency physician who found only an occasional postural limitation for stooping. (R. 175) Taking all of the evidence as a whole, the record contains substantial evidence to support the ALJ's finding of residual functional capacity and the hypothetical question posed to the vocational expert containing the reference to occasional stooping.

Wilkes' contention that the ALJ's decision runs afoul of Social Security Ruling SSR 96-9p fails as well. Wilkes argues that the ALJ's decision erred in that it failed to specify the frequency of the need to alternate sitting and standing and the extent of the erosion of the sedentary job base. Wilkes Brief at 19. The testimony of the vocational expert was based on the record evidence and was in response to a proper hypothetical question which set out all of the impairments found credible by the ALJ. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). The ALJ consulted with the vocational expert regarding jobs available to a hypothetical person having Wilkes' impairments and residual functional capacity, and the vocational expert identified three occupations that entailed little physical exertion and did not involve stooping. (R. 273-82) Wilkes' argument that the ALJ's decision ignored the requirements of SSR 96-9p is mistaken. Counsel for Wilkes specifically questioned the vocational expert on the issue of SSR 96-9p concerning the sit-stand option, and the vocational expert testified that "I respectfully disagree with the interpretation that you're making." (R. 280) Indeed, by consulting with a vocational expert on this issue, the ALJ did precisely what SSR 96-9p requires, as it provides: "[i]t may be

4

especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work." The vocational expert did just that, testifying that "this individual would need a sit-stand option, would have to be at a work station where they could adjust their position at their discretion, and either remain seated as long as they wanted to or stand as frequently as they needed to," (R. 274), and identifying three such positions, cafeteria, parking lot or dining room cashier, which are available in significant numbers in the national economy. (R. 274).

Wilkes also argues that the ALJ ignored the vocational expert's testimony regarding postural adjustments necessitated by Wilkes' pain. The ALJ found Wilkes' complaints of pain not to be fully persuasive, and supported this conclusion by a detailed review of Wilkes' medical history and the opinion of a medical expert at the hearing. (R. 20-21) The ALJ's assessment regarding the functional limitations imposed by Wilkes' pain is amply supported in the record. Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).

Plaintiff also argues that the ALJ erred by not finding that he met Listing 1.04 concerning Disorders of the Spine. Wilkes' argument, however, is contradicted both by the finding of the treating neurosurgeon, Dr. Vascik, that Wilkes' September, 2002 MRI showed "no definite nerve root compression," (R. 120), and the opinion of the medical expert, Dr. Stevens, who plainly stated that Wilkes did not meet or equal any listing. (R. 262) In order to meet Listing 1.04A, therefore, the ALJ would be required to reject Dr. Vascik's opinion, which was formed after reviewing Wilkes' MRI. In this regard, it is worth noting that Dr. Vascik was Wilkes' treating neurosurgeon. Likewise, as regards Listing 1.04B, Wilkes' record is devoid of any operative note, pathology report or medically acceptable imaging of spinal arachnoiditis meeting the other requirements of that section of the listing. The few notes from Dr. Bakhit cited by Wilkes do not

5

support a finding that either Listing 1.04A or 1.04B were met or equaled. There is no basis in this record to suggest that the ALJ's determination that Listing 1.04 was not met was either erroneous or unsupported.

## CONCLUSION

In affirming the final decision of the Commissioner, the court does not suggest that plaintiff is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Defendant's motion for summary judgment must be granted.

The Clerk of the Court hereby is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

**ENTER:** This 18 day of January, 2006.

Michael F. Urbanski
United States Magistrate Judge